UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DWAYNE E. BEGLEY,<br>　　　Plaintiff,<br><br>　　vs.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>the Social Security Administration,<br>　　　Defendant. | 1:10-cv-01113-SEB-TAB |

**ENTRY**

This case is an appeal from a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Dwayne Begley disability insurance benefits and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). For the reasons set forth herein, the Commissioner's decision is AFFIRMED.

A claimant must establish disability in order to be eligible for SSI. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To demonstrate physical or mental impairment, the claimant must present evidence of "anatomical, physiological, or psychological abnormalities" by "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908. Any physical or mental impairment "must be established by medical evidence . . . not only by [a claimant's]

statement of symptoms." *Id.* Further, the claimant is required to show that his impairments are severe enough such that "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. §§ 404.1520(a)(4), 416.924. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.* § 404.1520(a)(4). At the first step, if the claimant is currently engaged in substantial gainful activity, then he is not disabled. At the second step, if the claimant's impairments are not severe, then he is not disabled. A severe impairment "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.924(c). At the third step, if the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is disabled. The Listing of Impairments sets forth medical conditions that the Social Security Administration has deemed *per se* disabling. *Id.* § 404.1525(a). If the claimant's impairments do not satisfy a listing,[1] his residual functional capacity ("RFC") will be determined for the fourth and fifth steps of the sequence. RFC is an assessment of a claimant's ability to work on a regular, continuing

---

[1] For purposes of the Act, to satisfy a listing, a claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 405.1525(d). This finding will not be reached solely by virtue of a diagnosis. *Id.*

2

basis despite his impairment-related physical and mental limitations. *Id.* §§ 404.1545, 416.945. At the fourth step, if the claimant's RFC permits him to perform his past relevant work, then he is not disabled. Finally, at the fifth step, if the claimant can perform any other work in the relevant economy, then he is not disabled. The fifth step requires consideration of the claimant's RFC as well as his age, work experience, and education, which are not considered at step four.

In the foregoing process, the claimant bears the burden of proof at steps one through four. The burden then shifts to the Commissioner at step five to demonstrate that there are jobs the claimant can perform in the national economy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). For a claimant with purely exertional limitations,[2] the Commissioner may use the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids") to make a disability determination. The grids correlate the claimant's age, work experience, education, and RFC with a finding of "disabled" or "not-disabled." 20 C.F.R. §§ 404.1569, 404.1569a. If a claimant has non-exertional limitations or exertional limitations that restrict the full range of employment opportunities at his RFC level, then the grids may not be used at this step. Instead, a vocational expert must testify regarding the number of existing jobs for a person with the claimant's particular medical conditions and vocational characteristics. *Id.*; *Haynes v. Barnhart*, 416 F.3d 621, 629 (7th Cir. 2005); *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994). Results from the grids, however, may serve as advisory guidelines in such cases.

---

[2]Exertional limitations are those which only affect a claimant's ability to meet the strength demands of jobs. 20 C.F.R. § 1569a(b).

20 C.F.R. § 404.1569.

Our standard of review in a case such as this is deferential; if the Commissioner's decision is supported by substantial evidence in the record, the court must uphold his decision. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). The Supreme Court has defined "substantial evidence" as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This standard requires "more than a mere scintilla," but less than a preponderance, of the evidence. *Richardson*, 402 U.S. at 401; *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). This limited scope of judicial review derives from Congress's intent that the Commissioner, not the courts, make disability determinations. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

Mr. Begley filed an application for a period of disability, disability insurance benefits, and SSI on September 13, 2005, alleging disability since April 8, 2004. His application was denied on January 25, 2006, and upon reconsideration on May 15, 2006. Thereafter, Mr. Begley requested, received, and testified at an administrative hearing, which was held on September 5, 2008 and included an appearance by vocational expert George E. Parsons. The Administrative Law Judge ("ALJ") issued his decision finding Mr. Begley not disabled on April 17, 2009, and the Appeals Council denied his request for review on July 15, 2010. As a result, the ALJ's decision became the final decision of the Commissioner on his application.

The ALJ found that Mr. Begley met the insured status requirements of the Act through and beyond the date of his alleged disability. (R. at 16). At step one of the sequential evaluative process, the ALJ found that Mr. Begley had not engaged in substantial gainful activity since his alleged disability onset date. (*Id.*). At step two, the ALJ found that Mr. Begley suffers from the following severe impairments: anxiety disorder, avoidant personality disorder, chronic fatigue syndrome, degenerative disc disease, dysthymia, hypogonadism, neurogenic bladder, sleep apnea, and somatization disorder. (*Id.*). The ALJ also found at step two that Mr. Begley's Level I obesity does not rise to the level of a "severe" impairment for purposes of the Act. (*Id.* at 17). At step three, the ALJ found that Mr. Begley does not have an impairment or combination of impairments that meets or equals any condition on the Listing of Impairments. (*Id.*).

The ALJ then determined Mr. Begley's RFC for purposes of steps four and five of his evaluation. He found that Mr. Begley is capable of performing light work that "should involve simple and repetitive tasks with no contact with the public and only occasional, superficial contact with coworkers." (*Id.* at 20). At step four, the ALJ found that he could perform his past relevant work as a supply clerk. (*Id.* at 23). The ALJ also proceeded to consider step five. Considering Mr. Begley's age (42 on his alleged onset date), his education (through grade 12), and his RFC, and relying on the testimony of the vocational expert and the grids, the ALJ found that he can perform a significant number of jobs in the State of Indiana and the national economy. Thus, the ALJ concluded that he was not disabled from April 8, 2004 to the date of the administrative hearing. Mr.

Begley now asserts several errors in the ALJ's decision.

Mr. Begley was born in 1961. After completing his high school education, he has held a variety of jobs ranging from maintenance worker to support technician in a research laboratory. (R. at 115). The longest job he has maintained in the fifteen years prior to disability onset was a medical supply technician at a Veterans Affairs Hospital. (*Id.*). However, he has not worked at the level of substantial gainful activity since his alleged onset date of April 8, 2004. (*Id.*). He currently lives with a female friend who charges him no rent and does not ask him to perform household chores or yard work. (R. at 86-87).

## Discussion

Mr. Begley does not challenge the ALJ's findings at steps one through three. He alleges that the ALJ's decision contained three errors at step four, the step that concluded in the finding that he was not disabled. Specifically, he argues the following: that the ALJ erroneously equated performance of activities of daily living with ability to perform full-time work; that the ALJ did not properly evaluate his mental impairments; and that the ALJ did not logically bridge the evidence in the record to his ultimate decision. He seeks reversal of the ALJ's decision to deny benefits.

**Performance of activities of daily living.** Mr. Begley argues that the ALJ's "casual equation of daily activities with the ability to sustain full time work described in the RFC is . . . troubling." (Pl.'s Br. at 12). He relies on *Gentle v. Barnhart*, 430 F.3d 865, 866 (7th Cir. 2005), to support his argument that a person can be completely

6

disabled for Social Security purposes, even if he is "working" around the house. Specifically, he asserts that because his activities of daily living were more limited even than the activities of the plaintiff in *Gentle* ("Gentle"), the ALJ's finding is "disturbing." (Pl.'s Br. at 12). We find this argument without merit.

Mr. Begley has "mild restriction" in his activities of daily living; he can tend to his grooming, prepare simple meals, clean his living area, drive to various appointments, read, and walk in the back yard. (R. at 18). These activities are not strikingly different from those of Ms. Gentle, who engaged in cooking, cleaning, and shopping with help from friends. *Gentle*, 430 F.3d at 866. But the comparison between Ms. Gentle and Mr. Begley is inapposite. Mr. Begley can "lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently," and he can stand, sit, or ambulate for six hours per day. (R. at 20). By comparison, Ms. Gentle was unable to lift more than ten pounds frequently, and she could not bend or turn. *Gentle*, 430 F.3d at 867. Importantly, Ms. Gentle cared for two children and presented credible evidence of a medical need to rest two hours during each work day, which the court relied upon in reversing the ALJ's determination that she was not disabled. *Id.* We do not believe Mr. Begley is a similarly situated plaintiff, and regardless, we are not persuaded that the ALJ gave excessive weight to activities of daily living in determining that he can perform his past relevant work. The ALJ did not confine his disability determination to Mr. Begley's activities of daily living; rather, he conducted a thorough review of medical evidence, medications, and aggravating factors in assessing Mr. Begley's impairments. Furthermore, the ALJ accepted Mr. Begley's

allegations that his symptoms limited his RFC to a "moderate" degree when some expert opinions concluded that Mr. Begley was only limited to a "mild" degree.[3] (R. at 22). We believe the ALJ was generous in his analysis of Mr. Begley's daily activities, and we will not overturn his findings on this issue.

**Mr. Begley's mental impairments.** The ALJ found that Mr. Begley suffers from anxiety disorder, avoidant personality disorder, dysthymia, and somatization disorder. Mr. Begley argues that the ALJ committed error by "completely ignor[ing]" his alleged diagnosis of major depressive disorder and his perceived attention deficit problems, thus "underplay[ing] the severity of his mental impairments." (Pl.'s Br. at 14). He also objects to the ALJ's finding that he was "not mentally disabled because he could perform daily physical activities," and he contends that the ALJ substituted his judgment for that of Mr. Begley's physicians. (*Id.* at 16). We must reject this argument as well.

Mr. Begley's statement that the ALJ completely ignored some of his mental limitations and was "silent as to this critical evidence" is incorrect. (*Id.* at 14). The ALJ did specifically address Mr. Begley's 2005 psychiatric assessment by the Veterans Affairs Hospital, which listed "major depressive disorder by history." (R. at 17). The ALJ also cited portions of the record indicating Mr. Begley's "depressed" mood and "somewhat flat" affect. (*Id.* at 18). He considered physician testimony, the *Diagnostic and Statistical Manual of Mental Disorders*, and Mr. Begley's own testimony in determining

---

[3]In fact, the ALJ could have relied on the state agency physician's finding that Mr. Begley could perform "medium work" involving lifting up to fifty pounds at a time. *See* Defendant's Brief at 7; *see also* 20 C.F.R. § 404.1567(c).

whether this alleged impairment meets or equals a listing. Considering this mental impairment both singly and in combination with those listed above (including Mr. Begley's alleged attention deficit difficulties), the ALJ could not match it to a listing. He evaluated Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.08 (personality disorders). For each listing, he examined the four functional areas for evaluating the severity of mental impairments known as the "paragraph B" criteria and explained that Mr. Begley did not satisfy these criteria.[4] He subsequently evaluated each listing for "paragraph C" criteria[5] and concluded that the evidence in the record failed to establish the presence of these criteria as well.

Mr. Begley relies on *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003), to support his argument that the ALJ's decision-making process must involve confronting evidence that does not support his decision and explaining why he rejected such evidence. (Pl.'s Br. at 15). However, *Kasarsky* also instructs that "the point . . . is not whether [any given psychological procedural format] was literally 'part of the decision,'" but whether the ALJ acknowledged and incorporated the claimant's limitations. *Kasarsky*, 335 F.3d at 544. Here, the ALJ did so. The ALJ accepted Mr. Begley's allegations, together with

---

[4] For the three listings the ALJ evaluated, the mental impairment must result in at least two of the following: "marked restriction of activities of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 4, Subpt. P, App'x 1.

[5] "Paragraph C" criteria, which involve repeated decompensation and inability to function outside a highly supportive living arrangement, are only evaluated if "paragraph B" criteria are not satisfied. *Id.*

other evidence, that his mental symptoms moderately limit his functional capacity, as validated by his recommendation that Mr. Begley seek work free of significant social contact. (R. at 18). An ALJ is not required to address every piece of evidence simply because the claimant gives it special weight. We believe the ALJ properly weighed the evidence before him and concluded that major depressive disorder and attention issues were not material to this disability determination.

The ALJ also found that Mr. Begley's activities of daily living did not equate to his ability to engage in substantial gainful employment. He adequately addressed the process by which he determined that Mr. Begley's mental impairments were not so severe as to preclude him from working. Further, he assessed the credibility of Mr. Begley's statements and gave various reasons why he did not find them credible, which included Mr. Begley's own statements that he had stopped taking Prozac and that he had participated in outpatient counseling at the Veterans Affairs Hospital. (R. at 22). Thus, the ALJ's determination that Mr. Begley's psychological impairments did not preclude him from doing "light" work was supported by substantial evidence.

**Assessment of residual functional capacity.** Mr. Begley next argues that the ALJ erroneously performed the RFC assessment because he made "no attempt to build the bridge between the evidence of record and the decision." (Pl.'s Br. at 17). He contends that the ALJ should have performed a function-by-function assessment of his mental impairments and "ability to do the full panoply of physical work-related activities, without taking too many . . . breaks." (*Id.* at 18). Specifically, he disputes the treatment

10

of two conditions: his perceived inability to meet the memory demands of his past relevant work and his need to take frequent restroom breaks due to neurogenic bladder. (*Id.* at 17-18).

An ALJ is required to provide an "'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled," but he is "not required to mention every piece of evidence." *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young*, 362 F.3d at 1002). The Seventh Circuit has consistently held that an ALJ "need only 'minimally articulate his or her justification for rejecting or accepting specific evidence of a disability.'" *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (quoting *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988)). We find Mr. Begley's call for a "full and complete description" of the above-mentioned impairments groundless and see no reason to overturn the ALJ's reasonable determination on both matters.

Mr. Begley's argument that the ALJ made "no attempt to build the bridge between the evidence of record and the decision" is unsubstantiated for both conditions. (Pl.'s Br. at 17). In concluding that Mr. Begley's mental impairments cause no more than "mild" limitations in concentration, persistence, and pace, the ALJ properly considered the opinions of the consulting physicians, Mr. Begley's scores on various clinical tests, and specific observations of Mr. Begley during psychological assessment. He reviewed both objective medical evidence and subjective complaints when considering the intensity, frequency, and duration of Mr. Begley's depressive symptoms. Further, he found no aggravating or precipitating factors to negate his conclusion. We do not believe there

11

were gaps in the ALJ's opinion that would render his conclusions unsupported by substantial evidence.

Additionally, Mr. Begley contends that the ALJ did not thoroughly assess the impact of his neurogenic bladder on his ability to function in the workplace. He states alternatively that it can take fifteen minutes to use the restroom, or anywhere from ten to thirty minutes. We believe the ALJ properly addressed this issue in his opinion. The ALJ properly reviewed Mr. Begley's urodynamic test results and noted that the results were "normal." Further, he found enough inconsistencies between Mr. Begley's testimony and clinical notes to support a finding that Mr. Begley was incredible on this issue. Accordingly, we find that he satisfied his minimal duty to articulate his reasons and make a logical link between this finding and his ultimate disability determination.

**Conclusion**

The Commissioner's decision is supported by substantial evidence in the record and is not based on legal error as stated above. As such, his denial of Mr. Begley's application for benefits will be AFFIRMED.

IT IS SO ORDERED.

Date: 08/23/2011

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov